UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

JAY M. KURTZ, :
       Plaintiff, :
 :
       v. : No. 5:22-cv-1526
 :
WESTFIELD INSURANCE, :
       Defendant. :
_____

**O P I N I O N**
Defendant's Motion to Dismiss, ECF No. 8 – Granted

**Joseph F. Leeson, Jr.**                                                          **July 8, 2022**
**United States District Judge**

    **I.**      **INTRODUCTION**

        This case involves an underinsured motorist claim brought by Jay M. Kurtz. Specifically, Kurtz alleges his insurer, Westfield Insurance, committed a breach of contract (UIM Claim) and violated the covenant of good faith and fair dealing (Bad Faith Claim) when it denied his request for underinsured motorist (UIM) benefits.

        Kurtz suffered severe injuries in a car accident caused by Becker, another driver. Kurtz brought a lawsuit against Becker and agreed to a high/low arbitration with Becker's insurer, Allstate Insurance Company. Kurtz received an arbitration award of $40,000, which was below Becker's policy limit of $50,000.

        Kurtz alleges now that he suffered damages that exceed what was determined in arbitration. Thus, Kurtz argues that he is entitled to recover UIM benefits from his own insurer, Westfield. Westfield, however, rejected his request for UIM benefits.

        The motion before this Court is a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6). *See* Mot., ECF No. 8. The Court grants the Motion

because the arbitration award estops Kurtz from relitigating the amount of his damages from the accident with Becker under the doctrine of issue preclusion.

## II.     BACKGROUND[1]

Kurtz is a resident of Pennsylvania, and his insurer, Westfield, is an insurance company with its principal place of business in Ohio. *See* Am. Compl. ¶¶ 2–3, ECF No. 6. Kurtz operated a motor vehicle owned by him and insured pursuant to an automobile policy with Westfield. *See id.* ¶ 6. The automobile insurance policy includes a UIM provision.

Kurtz was involved in a car accident with Becker. *See id.* ¶ 10. As a result, Kurtz sustained serious injuries. *See id.* ¶ 14. To treat these injuries, Kurtz has received medical attention and incurred various expenses. *See id.* ¶ 16. He has also suffered a loss of earning capacity. *See id.* ¶ 17.

Kurtz brought suit against Becker in the Court of Common Pleas of Berks County (the Becker suit). *See* Mot., Ex. B. During the litigation against Becker, Kurtz repeatedly requested that Westfield treat the matter as a UIM case pursuant to its policy because he believed Becker's insurance policy with Allstate was insufficient to compensate him for his injuries. *See* Am. Compl. ¶ 19. However, Westfield denied Kurtz's request and eventually notified Kurtz that it would not be renewing his policy. *See id.* ¶ 21.

By the time the Becker suit was ready for trial, Becker had been deemed mentally incompetent to provide deposition or trial testimony. *See id.* ¶ 23. Kurtz therefore agreed to a high/low arbitration with Becker's insurer, Allstate, where the high figure equaled the limits of the

---

[1] The facts are taken from the Amended Complaint and accepted as true, with all reasonable inferences drawn in Kurtz's favor. *See Lundy v. Monroe Cty. Dist. Attorney's Office*, No. 3:17-CV-2255, 2017 WL 9362911, at *1 (M.D. Pa. Dec. 11, 2017), *report and recommendation adopted*, 2018 WL 2219033 (M.D. Pa. May 15, 2018). The Court's recitation of the facts does not include legal conclusions or contentions unless necessary for context. *See Brown v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, No. 1:19-CV-1190, 2019 WL 7281928, at *2 (M.D. Pa. Dec. 27, 2019).

Becker/Allstate policy. *See id*. Becker acknowledged that he was at fault. Therefore, the only issue to determine in arbitration was the amount of Kurtz's damages. Ultimately, Kurtz received an arbitral award in the amount of $40,000, which was below Becker's policy limit of $50,000. *See id*. ¶ 24. Pursuant to the high/low agreement, Kurtz did not appeal the award. *See id*.

Following the Becker suit, Kurtz demanded the full underinsured limits from Westfield. *See id*. ¶ 27. Kurtz provided all his medical records, other documentation, and information requested by Westfield. *See id*. ¶ 28. However, Westfield denied Kurtz's claim for UIM benefits. *See id*. ¶ 29.

Kurtz filed a complaint in this Court against Westfield, alleging both Breach of Contract and Violation of Good Faith and Fair Dealing. *See* Compl., ECF No. 1. Westfield filed a motion to dismiss for failure to state a claim. *See* ECF No. 5. Kurtz then filed the Amended Complaint against Westfield, again alleging that he is entitled to UIM benefits under his policy with Westfield and that Westfield denied his request in bad faith. *See* Am. Compl. Westfield filed a second Motion to Dismiss for failure to state a claim in response to Kurtz's Amended Complaint. *See* Mot. Kurtz filed a Response in opposition to the Motion. *See* Resp., ECF No. 9. Finally, Westfield filed a Reply Brief in support of its Motion to Dismiss. *See* Reply, ECF No. 10.

### III. LEGAL STANDARD

Under Rule 12(b)(6), a defendant may make a motion to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (cleaned up). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (*citing Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)). Additionally, when ruling on a motion to dismiss, the Court may "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputed authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F. 3d 223, 230 (3d Cir. 2010).

### IV.   ANALYSIS

Westfield argues that the arbitral award from the Becker suit has a preclusive effect to estop Kurtz from claiming before this Court that his damages exceed $40,000. Westfield argues further that since Kurtz's damages do not exceed $40,000, he is not entitled to UIM benefits under the policy because Becker's policy limits were $50,000. Westfield argues therefore that Kurtz's claim of bad faith should be dismissed because it is not bad faith to deny a claim that Kurtz is not entitled to. Kurtz argues that the Becker suit does not preclude him from relitigating the issue of his damages in this case and that he has sufficiently pled a bad faith claim.

The Court first addresses whether the Becker suit estops Kurtz from bringing his UIM Claim, concluding that the issue of damages is precluded by the Becker suit. The Court then briefly addresses Kurtz's Bad Faith Claim, concluding that it fails as a matter of law because Kurtz was not entitled to UIM benefits. Finally, the Court discusses why it dismisses the Amended Complaint with prejudice instead of without prejudice.

### a. The Becker suit estops Kurtz from relitigating the issue of damages.

"Under Pennsylvania law, the following conditions must be satisfied for collateral estoppel to bar a subsequent claim: (1) the issue decided in the prior case must be identical to the one presented in the later case; (2) there was a final judgment on the merits in the prior action; (3) the party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action." *Nationwide Mut. Fire Ins. Co v. George V. Hamilton, Inc.*, 571 F.3d 299, 310 (3d Cir. 2009) (cleaned up). Sometimes, Pennsylvania courts "add a fifth element, namely, that resolution of the issue in the prior proceeding was essential to the judgment." *In re Appeal of Coatesville Area Sch. Dist.* 244 A.3d 373, 379 (Pa. 2021) (citing *Off. of Disciplinary Couns. v. Kiesewetter*, 889 A.2d 47, 50–51 (Pa. 2021)).

The Court applies each of the five factors below, concluding that each of them are met. It then discusses case law that applies issue preclusion to similar cases and distinguishes this case from several cases that Kurtz cites to in support.

### i. Kurtz had a full and fair opportunity to litigate the issue of damages.

Since Kurtz concedes that "the first three elements of collateral estoppel have been met," Resp. 6, the Court first discusses the fourth element—that Kurtz had a full and fair opportunity to litigate the issue of damages in the Becker suit.

It is presumed that parties have a full and fair opportunity to litigate an issue whenever proceedings satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause. *See Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 481 (1982) The Third Circuit has identified the following as elements essential to due process: "(1) notice; (2) a neutral arbiter; (3) an opportunity to make an oral presentation; (4) a means of presenting evidence; (5) an opportunity to cross-examine witnesses or to respond to written evidence; (6) the right to be represented by

counsel; and (7) a decision based on the record with a statement of reasons for the result." *Di Loreto v. Costigan*, 600 F. Supp. 2d 671, 698 (E.D. Pa.), *aff'd*, 351 F. App'x 747 (3d Cir. 2009).

Kurtz argues he has not had a full and fair opportunity to litigate the issue of damages, but none of his arguments go to the elements that this Court considers when determining whether due process was met. Instead, he asserts that he chose to arbitrate the Becker suit because alternatives to arbitration would have "required [him] to leave money on the table" and because it allowed him to adjudicate the matter quickly "while saving on costs of full litigation." Resp. 6.

In other words, his reasons for choosing to arbitrate the Becker suit were strategic. However, that does not establish that he did not have a full and fair opportunity to litigate the issue of damages in the Becker suit. Indeed, Kurtz has not alleged any facts or made any arguments that might establish that he did not receive the minimum procedural requirements under the Fourteenth Amendment's Due Process Clause.

For example, Kurtz does not allege any procedural defects in the arbitration proceeding, such as a biased arbiter, the loss of vigorous advocacy, or the lack of any chance to present evidence. On the contrary, the Amended Complaint and other records that this Court may consider when adjudicating a motion to dismiss show that, at the very least, he received the minimum amount of due process the Fourteenth Amendment requires.[2] For example, Kurtz received the binding arbitration award in arbitration confirmed by a Pennsylvania court of common pleas at which Kurtz was represented by counsel.

Practical realities do not equate to procedural unfairness. Becker's $50,000 insurance limits, and other factors, may have caused Kurtz to choose a certain litigation strategy, but this Court

---

[2] This Court may consider public records like the docket of the Becker suit and the Order For Binding Arbitration, *see* Mot. Ex.'s B and C, without converting the Motion into a motion for summary judgment. *See M & M Stone Co. v. Pennsylvania*, 388 F. App'x 156, 162 (3d Cir. 2010). The Court notes that it takes judicial notice of the existence of the Order For Binding Arbitration itself, not for the truth of the facts asserted therein. *See id.*

cannot allow a party to disregard the prior judgment merely because of his dissatisfaction with the compensation or manipulation of litigation strategies.

### ii. The remaining elements support issue preclusion regarding damages.

Even though Kurtz concedes that the remaining elements of issue preclusion are satisfied here, the Court discusses them briefly in order to be thorough.

First, the issue of damages decided in the Becker suit is identical to the issue Kurtz asks this Court to decide. In order for Kurtz to recover on his UIM Claim, he must establish that his damages exceeded Becker's policy limit of $50,000. But it was already determined in the Becker suit that Kurtz's damages were $40,000. Thus, by alleging that he can recover more from Westfield, Kurtz is requesting this court to redetermine his damages.

For the second element, the binding arbitration was a "judicial arbitration" because it was a lawsuit referred by a judge to arbitration based on the parties' agreement. "Pennsylvania follows the predominant view among the states that unless the arbitral parties agreed otherwise, a judicially confirmed private arbitration award will have a collateral estoppel effect, even in favor of non-parties to the arbitration, if the arbitrator actually and necessarily decided the issue sought to be foreclosed and the party against whom estoppel is invoked had full incentive and opportunity to litigate the matter." *Frog, Switch & Mfg. Co. v. Pa. Hum. Rels. Comm'n*, 885 A.2d 655, 661 (Pa. Commw. Ct. 2005) (citing *Dyer v. Travelers*, 572 A.2d 762, 764 (Pa. Super. 1990); *see Ottaviano v. Southeastern Pennsylvania Transp. Authority*, 361 A.2d 810, 814 (Pa. Super. 1976); *see also* Restatement (Second) of Judgments § 84 (1982)). The Court of Common Pleas of Berks County confirmed the arbitration between Kurtz and Becker as binding arbitration. *See* Mot., Ex. C. Thus, the award has a collateral estoppel effect based on Pennsylvania law.

The third element is satisfied because Kurtz was the same party in the Becker suit.

Finally, the fifth element is satisfied because the damages issue decided in the Becker suit was essential to the arbitral award. The same issue is a predicate to any recovery Kurtz could have in this case because he can only recover if his damages are beyond Becker's policy limits.

### iii. Applicable case law and case law cited by Kurtz.

In cases with similar factual backgrounds, courts have held that a binding arbitration award for less than the defendant's insurance limits estops the plaintiff from seeking UIM benefits. *See Harvey v. Liberty Mut. Grp., Inc.*, 8 F. Supp. 3d 666, 677 (E.D. Pa. 2014).

In *Harvey*, Harvey was injured in a car accident and agreed to a binding high/low arbitration to resolve his lawsuit against Smedley, the tortfeasor-driver. *See id.* at 670. The arbitrator awarded Harvey less than Smedley's liability insurance limits. *See id*. The court held that Harvey was collaterally estopped from seeking UIM benefits as a result. *See id*. at 677. The court explained that

> Because Mr. Harvey's losses and damages were determined in a binding prior proceeding not to exceed Mr. Smedley's available insurance, his UIM claim fails under both the Pennsylvania statute and the terms of his insurance contract with Netherlands. His claim is not a UIM claim under the MVFRL because Mr. Smedley's insurance was not insufficient to pay Mr. Harvey's losses and damages.

*Id*.; *see also Borrelli v. AIU N. Am., Inc.*, No 0430, 2014 Phila. Ct. Com. Pl. LEXIS 144, at *1 (Pa. C. Jan.14, 2014) (finding that all elements of collateral estoppel were met and plaintiff could not recover UIM benefits following the high/low arbitration award with the other tortfeasor-driver).

In the Amended Complaint, Kurtz cites five cases to support his argument that the arbitral award does not preclude him from relitigating the issue of damages. *See* Am. Comp. ¶ 25. However, none of the cited cases are on all fours with this case.

Kurtz first cites to *Boyle v. Erie Insurance Co.*, 656 A.2d 941 (Pa. Super. 1995). The *Boyle* case involved an exhaustion clause in a UIM policy in the context of a settlement. *See id.* at 941. This case does not involve an exhaustion clause, and it was not resolved through settlement.

Kurtz next cites to *Krakower v. Nationwide Mutual Insurance Co.*, 790 A.2d 1039 (Pa. Super. 2001). The *Krakower* court held that arbitrators could proceed with an arbitration hearing between the motorist and the insurer even though the motorist's action against the other driver was not yet concluded because the arbitrators gave the insurer a credit for the full amount of the driver's liability insurance coverage. *See id.* at 1041. In this case, Kurtz does not wish to proceed with arbitration while litigating the underlying suit. Even if that were the case, and the Court credited Westfield with the full amount of Becker's policy limits, that means Westfield would be credited with $50,000. Kurtz's UIM claim would therefore still fail because Kurtz's damages were determined to be $40,000.

Next, Kurtz cites to *Sorber v. American Motorists Insurance Co.*, 680 A.2d 881 (Pa. Super. 1996). However, the *Sorber* case, like *Boyle*, involved a settlement between the insured and tortfeasor. *See id*. The remaining two cases Kurtz cites merely affirm *Boyle*. *See Chambers v. Aetna Cas. & Sur. Co.*, 658 A.2d 1346, 1346 (Pa. Super. 1995); *see also Kelly v. State Farm Ins. Co.*, 668 A.2d 1154, 1154 (Pa. Super. 1995).

None of the cases cited by Kurtz involve a situation where the insured adjudicated his claim against the tortfeasor through arbitration where the judgment was less than the tortfeasor's insurance. In sum, none of the cases cited by Kurtz stand for the proposition that he claims.

To put it simply, Kurtz already litigated the issue of damages in the Becker suit. Now, he wants to relitigate the same issue with the hope that his damages will be recalculated to be greater than Becker's policy limit of $50,000. Allowing Kurtz to do so, absent any allegation that he was denied minimum due process in the Becker suit, would defeat the purpose of issue preclusion. *See Allen v. McCurry*, 449 U.S. 90, 94 (1980) ("As this Court and other courts have often recognized, res judicata and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits,

conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.").

Kurtz is therefore stuck with his determined damages of $40,000. This defeats his UIM Claim as a matter of law because Becker's policy limits exceeded his damages. An "underinsured motor vehicle" is "[a] motor vehicle for which the limits of available liability insurance and self-insurance are insufficient to pay losses and damages." 75 Pa.C.S.A. § 1702. Since Kurtz's damages did not exceed the limits of Becker's policy, Becker's vehicle cannot be an underinsured motor vehicle, meaning Kurtz cannot be entitled to UIM benefits.

### b. Kurtz's Bad Faith Claim fails as a matter of law.

In order to bring a successful bad faith claim, a plaintiff must show "(1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis." *Kosierowski v. Allstate Ins. Co.*, 51 F. Supp. 2d 583, 588 (E.D. Pa. 1999), *aff'd*, 234 F.3d 1265 (3d Cir. 2000) (quoting *Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 233 (3d Cir.1997)).

Having determined that Kurtz was not entitled to UIM benefits as a matter of law, it follows logically that Westfield did not lack a reasonable basis for denying his request. Nor did Westfield, as a matter of law, know or recklessly disregard its lack of reasonable basis. Kurtz's Bad Faith Claim therefore fails as a matter of law.

### c. The Amended Complaint is dismissed with prejudice.

Normally, when granting a motion to dismiss for the first time, courts will give a plaintiff leave to file an amended complaint. However, courts may dismiss a complaint with prejudice when "leave to amend would be futile." *Lontex Corp. v. Nike, Inc.*, 384 F. Supp. 3d 546, 559 (E.D. Pa. 2019). Leave to amend is futile when "the complaint, as amended, would fail to state a claim upon

which relief could be granted." *Id*. at 560 (quoting *In re Egalet Corp. Sec. Litig.*, 340 F. Supp. 3d 479, 514 (E.D. Pa. 2018)).

In this case, leave to amend would be futile. In its motion to dismiss the Complaint, Westfield made similar arguments that it makes in its second motion to dismiss. *See* ECF No. 5. In response, Kurtz filed the Amended Complaint, but, as the Court has explained in this Opinion, the Amended Complaint did not overcome the problems that Westfield pointed out in its first motion to dismiss.

In two short sentences of the Response, Kurtz argues that discovery is needed to "flesh out whether" he had a full and fair opportunity to litigate the damages issue. Resp. 7. But this turns the litigation process on its head. A plaintiff is entitled to discovery only when they have made factual allegations that support a cognizable claim; discovery is not for determining whether there is a factual basis for a claim not yet made. *See In re Energy Future Holdings Corp.*, 513 B.R. 651, 656 (Bankr. D. Del. 2014). Moreover, Kurtz does not even elaborate on what procedural issues discovery might possibly illuminate.

If there were any procedural issues with the Becker suit, then Kurtz should already be familiar with what they are because it was his own lawsuit. The same can be said for his counsel in this matter because the same counsel represented Kurtz in the Becker suit. Thus, if they cannot allege facts to show that Kurtz did not receive the minimum amount of due process in the Becker suit after two attempts, then there is no chance that they will be able to do so if given a third try. As a result, the Amended Complaint is dismissed with prejudice.

## V.     CONCLUSION

Kurtz already litigated the issue of damages in the Becker suit, and his damages were determined to be $40,000. He is estopped from relitigating the same issue in this matter under the doctrine of issue preclusion. Since Becker's policy limit was $50,000, he cannot be an underinsured

motorist as a matter of law. As a result, Kurtz's UIM Claim fails as a matter of law. Since Kurtz was not entitled to UIM benefits, it follows that his Bad Faith Claim must fail as a matter of law because Westfield had a reasonable basis for denying Kurtz UIM benefits. Finally, because any additional amendment would be futile, the Court dismisses the Amended Complaint with prejudice.

      A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge